UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALLCITY FAMILY HEALTHCARE CENTER,
INC.,

**MEMORANDUM & ORDER**

**12-CV-6428 (NGG) (JMA)**

Plaintiff,

-against-

BOSS SURGICAL GROUP, LLC,

Defendant.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are Plaintiff AllCity Family Health Care Center, Inc.'s ("Plaintiff" or "AllCity") objections to Magistrate Judge Joan M. Azrack's Report and Recommendation ("R&R") that recommended the court (1) deny Plaintiff's Motion to Remand this action to state court; (2) grant Defendant's Motion to Compel Arbitration, and (3) dismiss this action. For the reasons set forth below, the R&R is ADOPTED as modified herein.

**I.    BACKGROUND**

Plaintiff AllCity is an S corporation accredited and licensed as a surgery center under Article 28 of the New York Public Health Law. (Am. Compl., Ex. 3 (Decl. of Nasser F. Hassan) ("Hassan Decl.") (Dkt. 13-3) ¶ 3.) Plaintiff's facility is located in Brooklyn, New York. (Id.) Defendant Boss Surgical Group, LLC ("BSG") is a limited liability company established under the laws of California and whose members are all residents of California. (Not. of Removal (Dkt. 1) ¶ 2.)

**A.    The Administrative Services Agreement**

In 2012 Plaintiff and Defendant executed two contracts under which Defendant agreed to assist in the management or administration of Plaintiff's facility. The first agreement, the

1

Management and Consulting Services Agreement ("MCSA") was entered into on June 18, 2012. (Compl., Ex. A (MCSA) (Dkt. 8-2).) Following the execution of the MCSA, Plaintiff contacted Defendant to request that the agreement be revised. (Hassan Decl. ¶ 8.) To avoid violating a New York State Department of Health regulation that prohibits management of an Article 28 facility by a company that is not approved by the state, in September 2012, the parties agreed to a revised contract entitled the Administrative Services Agreement ("ASA"). (Id. ¶ 11.) The ASA was virtually identical to the MCSA except that it characterized Defendant's services as administration rather than management of Plaintiff's facility. (Id.; Decl. of Nasser F. Hassan in Opp'n to Mot. to Compel ("Hassan Opp'n Decl.") (Dkt. 16) ¶ 38.) Unchanged from the MCSA is the ASA's fee arrangement, under which Defendant would receive a fee equal to 25% of the net revenue of Plaintiff's facility. (MCSA ¶ 3.1; Not. of Removal, Ex. A, (Summons attaching ASA) ¶ 3.1.) The ASA was signed by Nasser Hassan, CEO, on behalf of AllCity and by three officers on behalf of "Boss Surgical Management, LLC." (Id. at signature page.) Elsewhere in the ASA, however, the contracting party consistently is referred to "Boss Surgical Group, LLC" or "BSG." (See generally ASA.) The ASA was backdated to June 19, 2012. (Id. at opening paragraph.)

During negotiations of the ASA, Hassan had become suspicious that other companies were involved with the arrangement between AllCity and BSG due to his receipt of a memorandum from "Boss Surgical Management Team" shortly before he signed the ASA. (Hassan Decl. ¶ 12.) Unable to get clarification on this issue from Defendant, on November 16, 2012, Hassan exercised Plaintiff's right to terminate the agreement pursuant to section 4.4 of the ASA. (Id. ¶¶ 12-13.)

### B.    Dispute Resolution Provisions

The ASA includes provisions governing the resolution of disputes related to the agreement. (See ASA ¶ 9.2.) These provisions include an arbitration clause:

> *Meet and Confer.* If any dispute, controversy or claim arises out of or relates to this Agreement, or the breach thereof, the parties shall first use their good faith efforts to resolve the dispute. The BSG Representative and the Company Representative shall meet to attempt to resolve the dispute in good faith. If the parties are unable to reach a mutually acceptable resolution to the dispute through such efforts, at the written election of either party the matter shall be submitted to binding arbitration as provided below.

(Id. ¶ 9.2(a).) The subsections following this provision address selection of the arbitrator and the process of arbitration itself, including that "[t]he arbitration hearing shall take place in Santa Clara County, California . . . and shall be governed by the rules of Section 1280 et seq. of the California Code of Civil Procedure." (Id. ¶ 9.2(c).) Alternatively, the ASA provides for relief from the courts:

> *Injunctive Relief.* Notwithstanding the contrary provisions of this Section 9.2, each of the parties hereto shall have the right to apply for and obtain a temporary restraining order or other temporary, interim or permanent injunctive or equitable relief from a court of competent jurisdiction in order to enforce the provisions of the Agreement as may be necessary to protect its rights.

(Id. ¶ 9.2(f).) A forum selection clause requires that any claim not subject to arbitration must be brought in California courts, specifically the "state and Federal courts located in (or with jurisdiction over) the County of Santa Clara." (Id. ¶ 9.2(i).) All of the aforementioned provisions fall within section 9.2, which under the agreement "survive[s] expiration or termination of this Agreement." (Id. ¶ 9.2(d).) The contract is governed by California law (Id. ¶ 9.6.).

3

## II. PROCEDURAL HISTORY

Plaintiff brought an action for declaratory judgment in New York Supreme Court, Kings County, on November 23, 2012, by filing a summons with notice seeking an order declaring the ASA null and void *ab initio* because "the purpose and intent of said agreement are violative of the laws of the State of New York and the applicable rules and regulations, as well as public policy." (Not. of Removal, Ex. A (Summons) at 1.) Defendant received notice on December 4, 2012, and timely removed the action to this court on December 28, 2013, on the basis of diversity jurisdiction. (Not. of Removal ¶ 4.) By letter dated January 3, 2013, Defendant elected to submit the dispute to arbitration and requested that Plaintiff discontinue the action.[1] (Declaration of Brian W. Blatz ("Blatz Decl.") Ex. B, (Def. Arbitration Demand) (Dkt. 28-2) at 1.) Plaintiff did not respond to the letter. (Id. ¶¶ 17-18.)

During a pre-motion conference, the court directed Plaintiff to file a complaint, granted Plaintiff leave to bring a motion to remand, and granted Defendant leave to bring a motion to compel arbitration and/or a motion to dismiss. (Jan. 24, 2013, Min. Entry.) Plaintiff filed the Complaint and amended it shortly after. (Compl.; Am. Compl. (Dkt 13).) Plaintiff filed a Motion to Remand the action to state court (Mot. to Remand (Dkt. 9)), Defendant filed a Motion to Compel Arbitration and Dismiss or Stay Action (Mot. to Compel (Dkt. 26)), and Plaintiff filed a Cross-Motion for an Injunction Precluding Arbitration (Pl. Opp'n & Cross-Mot. (Dkt. 19)). The court referred these motions to Magistrate Judge Joan M. Azrack for an R&R pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Jan. 24, 2014, Order.)

---

[1] There is no evidence in the record that representatives of the parties met in a good faith attempt to resolve the dispute before Defendant elected to pursue arbitration, as required by section 9.2(a). However, the issue of whether this prerequisite to arbitration was satisfied is for the arbitrator to decide. See BG Grp., PLC v. Republic of Argentina, 134 S. Ct. 1198, 1207 (2014) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration . . . . includ[ing] the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.") (internal citations and quotation marks omitted).

4

On April 23, 2014, Judge Azrack issued her R&R, recommending that the court (1) deny Plaintiff's Motion to Remand this action to state court; (2) grant Defendant's Motion to Compel Arbitration, and (3) dismiss this action. (R&R at 21.) Plaintiff timely filed objections (Obj. (Dkt. 46)), to which Defendant filed a response (Resp. to Pl. Obj. (Dkt. 47)).

## III. STANDARD OF REVIEW

When a magistrate judge issues an R&R and it has been served on the parties, a party has fourteen days to object to the R&R. Fed. R. Civ. P. 72(b)(2). If the district court receives timely objections to the R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, to obtain de novo review of an R&R, an objecting party "must point out the specific portions of the report and recommendation to which [it] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R].").

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under [ ] Fed. R. Civ. P. 72(b)"). Portions of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

## IV. PLAINTIFF'S OBJECTIONS

The court will first address Plaintiff's objections to the R&R's recommendation that Plaintiff's Motion to Remand be denied. Because Plaintiff's Motion to Remand based on lack of diversity jurisdiction goes is an issue of subject matter jurisdiction, the court will address it before the motion for arbitration. Cf. Lehman v. Discovery Commc'ns, Inc., 217 F. Supp. 2d 342, 347 (E.D.N.Y. 2002) ("Where jurisdiction is lacking, the district court must dismiss the Complaint without regard to the merits of the lawsuit.") (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d Cir. 1996)).

### A. Plaintiff's Motion to Remand

In its objections, Plaintiff challenges Judge Azrack's finding that Defendant has satisfied the amount-in-controversy requirement necessary for diversity jurisdiction under 28 U.S.C. § 1332(a). (Obj. at 15.) Judge Azrack concluded that there was a reasonable probability that Defendant exceeded the $75,000 jurisdictional amount based on evidence in the declaration of Brian Blatz, an attorney and a managing member of BSG. (R&R at 8.) The declaration states that Defendant anticipated earning approximately $6 million per year from the administrative fee owed to it under the ASA and that in preparation to implement the contract, Defendant had "incurred costs of approximately $1.3 million in connection with the ASA." (Blatz Decl. ¶¶ 11-12).).

Plaintiff objects that Judge Azrack "has made the erroneous assumption that defendant's representation are [sic] sufficient to meet [the] jurisdictional requirement." (Obj. at 15.) Plaintiff argues that Defendant bears the burden of establishing the amount in controversy by a "reasonable certainty," and the R&R erred by applying a standard of "reasonable sufficiency." (Id. at 16.) Plaintiff maintains that parties seeking lost profits usually present expert testimony

modeling the amount of estimated future profits. (Id.) Because Plaintiff presents an objection to a specific portion of the R&R, this issue will be reviewed de novo. See U.S. Flour, 2012 WL 728227, at *2.

The burden of proving that the requirements for diversity jurisdiction are satisfied rests with the removing party, who must establish the jurisdictional amount by a "reasonable probability." Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000) ("[The removing defendant] has the burden of proving that it appears to a *reasonable probability* that the claim is in excess of the statutory jurisdictional amount.") (emphasis added); Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a *reasonable probability* that the claim is in excess of the statutory jurisdictional amount.") (emphasis added). Indeed the sole case Plaintiff cites to support its objection on this issue, DiscoveryLogix, LLC v. Haystac, LLC, also applies the reasonable probability standard. No. 13-CV- 4025 (PKC), 2013 WL 4806939, at *1 (S.D.N.Y. Sept. 9, 2013) ("The removing party 'has the burden of proving that it appears to a *reasonable probability* that the claim is in excess of the statutory jurisdictional amount." (emphasis added) (citing Mehlenbacher, 216 F.3d at 296)).[2]

"To determine whether that burden [of satisfying the amount in controversy requirement] has been met, we look first to the plaintiff['s] complaint and then to [the defendant's] petition for removal." Mehlenbacher, 216 F.3d at 296. If those pleadings are inconclusive, the court may

---

[2] The reasonable certainty standard that Plaintiff advocates is appropriate at the stage where a court (or jury) determines the amount of recoverable damages, usually after liability has been determined and certainly after subject jurisdiction has been established. See Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1577 (2d Cir. 1994) ("Under New York law, the recovery of lost profits as damages for breach of contract is subject to the following stringent requirements: First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty."); W.L. Hailey & Co. v. Niagara Cnty., 388 F.2d 746, 753 (2d Cir. 1967) ("It is well settled that once a plaintiff has proved that it is more probable than not that he has been damaged, plaintiff need only show the amount of his damages with reasonable certainty.").

7

look to any other evidence in the record. <u>United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.</u>, 30 F.3d 298, 305 (2d Cir. 1994). "Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" <u>Id.</u> (citing <u>McNutt v. Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178, 189 (1936)) (alteration in original).

Reviewing this issue de novo, the court finds that neither Plaintiff's Complaint nor Defendant's Notice of Removal refer to any damages and therefore looks to other evidence in the record. <u>See</u> <u>United Food</u>, 30 F.3d at 305. Defendant supported its Motion to Compel Arbitration with a declaration from Brian W. Blatz, an attorney and managing member of BSG who was personally involved with negotiation of the MCSA and ASA. (Blatz Decl. ¶ 1; Hassan Decl. ¶ 3, 6-12 (referencing Blatz's involvement in contract negotiations).) His declaration is based on personal knowledge and his review of BSG documents and is sworn under penalty of perjury. (Blatz Decl. ¶ 1.) As such, the court views it as "competent evidence" on this issue. <u>See</u> <u>United Food</u>, 30 F.3d at 305. Although the declaration does not include invoices or a damages model regarding lost profits, it is specific as to the types of activities for which Defendant incurred $1.3 million in costs in connection with the ASA. (Blatz Decl. ¶ 12.) These expenses were associated with the travel of BSG employees to Brooklyn to update Plaintiff's back office systems; relocation of other employees; recruitment of new physicians; renovation, painting, and furnishing of Plaintiff's facility; and hosting AllCity's representatives at Defendant's California facilities; as well as other costs. (<u>Id.</u>) There is a reasonably probability these expenses alone exceed the jurisdictional amount even without adding Defendant's alleged lost profits. Therefore Plaintiff's objections to the R&R's finding on the amount in controversy are overruled.

## B. Defendant's Motion to Compel Arbitration

The majority of Plaintiff's objections concern Judge Azrack's recommendation that this court grant Defendant's Motion to Compel Arbitration. The objections fall into three broad categories: (1) whether the parties agreed to arbitrate this dispute, (3) whether the ASA is a valid contract, and (3) New York State public policy concerning the regulation of medical facilities.

### 1. The Arbitrability of this Dispute

"It is well settled in both commercial and labor cases that whether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (citations and internal quotation marks omitted; alteration in original); see also Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009) ("[A]rbitrability questions are presumptively to be decided by the courts, not the arbitrators themselves."). Arbitrability is a matter of contract and therefore "courts generally should apply ordinary state law principles governing contract formation in deciding whether such an agreement exists." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 939 (1995); Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) ("Courts apply generally accepted principles of contract law to determine whether parties have agreed to arbitrate." (citing Thomson–CSF S.A. v. Am. Arbitration Ass'n., 64 F.3d 773, 776-77 (2d Cir.1995))).

While the question of whether parties to a contract have agreed to arbitrate is determined by state law, it is informed by the strong federal policy in favor of arbitration expressed in the Federal Arbitration Act ("FAA"). Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003). Enacted by Congress "in response to widespread judicial hostility to arbitration," Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2308-09 (2013), the FAA provides that

written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA supports the principle that arbitrability is a creature of contract and thus "courts must rigorously enforce arbitration agreements according to their terms." Italian Colors, 133 S. Ct. at 2309. This federal policy creates a presumption that "any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." Telenor Mobile, 584 F.3d at 406.

If a contract contains an arbitration clause, a court may characterize the clause as broad or narrow as a first step to determine whether a particular dispute falls within its scope. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001); ACE Ltd. v. CIGNA Corp. & CIGNA Holdings, Inc., No. 00-CV-9423 (WK), 2001 WL 767015, at *2 (S.D.N.Y. July 6, 2001). The court looks to the language of the clause to determine whether "taken as a whole, [it] evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if . . . arbitration was designed to play a more limited role in any future dispute." Louis Dreyfus Negoce, 252 F.3d at 225. "[V]ery expansive language will generally suggest a broad arbitration clause." Id.; cf. McDonnell Douglas Fin. Corp. v. Pa Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) ("We conclude that the clause at issue here is a narrow one. It is not the sort of broad clause in which parties agree to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes.'") (citations and internal quotation marks omitted)).

A broad arbitration clause creates a presumption of arbitrability. Collins & Aikman Products Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995). Under these circumstances "any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator." McDonnell Douglas, 858 F.2d at 832. The

presumption is "only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997). If the arbitration clause is narrow or limited, however, the court must determine whether the dispute concerns "an issue that is on its face within the purview of the clause." Louis Dreyfus Negoce, 252 F.3d at 224.

        *a.*     *The ASA's Arbitration Clause*

In its objections, Plaintiff argues that the parties did not agree that all disputes would be submitted to arbitration because other provisions in the contract permit a party to seek judicial relief in certain circumstances. (Obj. at 10-13.) Specifically Plaintiff contends that the "Injunctive Relief" provision (¶ 9.2(f)) and the "Severability" provision (¶ 9.9) demonstrate that the ASA does not state a "preference" for arbitration. (Id. at 13.) Because the R&R only minimally discussed the effect, if any, of these provisions on arbitrability, the court will review this issue de novo.

The court concludes that the ASA's arbitration clause is broad in scope. It covers "any dispute, controversy or claim [that] arises out of or related to this Agreement, or the breach thereof." (ASA ¶ 9.2(a).) This language is expansive and mirrors arbitration clauses that have been construed as broad by the Second Circuit. See, e.g., Collins & Aikman, 58 F.3d at 18 (finding a clause submitting to arbitration "[a]ny claim or controversy arising out of or relating to this agreement" to be broad).

Well established contract principles dictate, however, that a contract should be read as a whole to determine whether certain clauses modify, explain or limit one another. See Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); Westmoreland Coal Co. v.

11

Entech, Inc., 100 N.Y.2d 352, 358 (2003) ("A written contract will be read as a whole, and every part will be interpreted with reference to the whole .... The meaning of a writing may be distorted where undue force is given to single words or phrases.").)[3] The ASA's arbitration clause must therefore be read in concert with the "Injunctive Relief" provision, which permits a party to seek injunctive or equitable relief from the courts in certain circumstances. (ASA ¶ 9.2(f).)

To avoid reading the Injunctive Relief provision as mere surplusage, the court interprets this provision as an exception to the broad arbitration clause. See TravelClick, Inc. v. Open Hospitality Inc., No. 04-CV-1224 (RJH), 2004 WL 1687204, at *5 (S.D.N.Y. July 27, 2004) ("The Court interprets the 'Equitable Relief' provision as providing the parties a narrow exception to arbitration."). The provision's inclusion of the language "notwithstanding the contrary provisions of this Section 9.2"—the section that includes the arbitration clause—also indicates the parties' intention that, where it applies, the Injunctive Relief provision trumps the arbitration clause. See Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993) ("[T]he use of ... a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.").

Therefore the remaining question for the court is whether the dispute presented in this action falls squarely within the scope section 9.2(f) and therefore is an exception to arbitration. In other words, the court must determine whether the presumption of arbitrability is overcome because the arbitration clause, as limited by section 9.2(f), "is not susceptible of an interpretation that covers the asserted dispute." WorldCrisa, 129 F.3d at 74.

---

[3] The ASA dictates that California law governs the agreement, but the parties have relied on New York law in their briefs. State law governs the interpretation of a contract—as informed by the presumptions of the FAA—but the relevant contract principles are nearly identical in both jurisdictions.

12

The court concludes that this case falls outside the scope of section 9.2(f), which is limited in ways that exclude this dispute. The provision covers only *injunctive or equitable* relief seeking *to enforce* the agreement.[4] (ASA ¶ 9.2(f).) The court will address these restrictions in turn.

### b. Injunctive or Equitable Relief Under Section 9.2(f)

Plaintiff claims that it "requested equitable relief by way of a declaration."[5] (Obj. at 10.) Strictly speaking, however, declaratory judgment is a form of statutory relief; it is neither legal nor equitable. See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 284 (1988) ("Actions for declaratory judgments are neither legal nor equitable."); Am. Safety Equip. Corp. v. J.P. Maguire & Co., 391 F.2d 821, 824 (2d Cir. 1968) ("A declaratory judgment action is a statutory creation, and by its nature is neither fish nor fowl, neither legal nor equitable."). Nevertheless, courts have at times characterized the basic "nature of the underlying controversy" of a particular declaratory judgment action as legal or equitable. See, e.g., Conn. Gen. Life Ins. Co. of N.Y. v. Cole, 821 F. Supp. 193, 197 (S.D.N.Y. 1993) (finding that the declaratory action was legal in nature because the underlying controversy concerned defendant's contractual claims to benefits under insurance policies).

---

[4] Defendant argues that the Injunctive Relief provision applies only where "emergency injunctive relief is necessary to maintain the status quo or where the court has previously held that a provision of the parties' agreement is unenforceable or invalid." (Def. Resp. to Obj. at 5.) The plain language of the provision, however, contains none of these restrictions; it permits "permanent" injunctive or equitable relief in addition to "temporary" and does not require that it be sought on an emergency basis or after an order invalidating part of the agreement. However, as discussed in this Opinion, section 9.2(f) is restricted in other ways that exclude the instant case from its coverage.

[5] Plaintiff also argues that this action should be subject to resolution by the courts pursuant to the Declaratory Judgment Act and objects that this went undiscussed in the R&R. (Obj. at 9-10.) As plaintiff notes, the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant," Wilton v. Seven Falls Co., 515 U.S. 277, 278 (1995), and thus does not mandate that the court exercise jurisdiction over this action. In light of the parties' agreement to arbitrate and the FAA's presumption in favor of arbitration, it would be improper for the court to hear this dispute simply because it was brought as a declaratory judgment action. Therefore this objection is overruled.

Here, the parties' dispute concerns the validity of a contract under which Defendant was entitled to a percentage of Plaintiff's income in return for providing administrative services. Plaintiff seeks declaratory judgment that the contract was null and void from its inception, arguing that the management and fee structures are illegal. Defendant claims that it expended monies in reliance on the contract and expected future profits based on the agreement. At its core, this action is a contract dispute that will determine Plaintiff's financial obligations, if any, to Defendant under the ASA. It therefore has a distinctly legal cast. See Simler v. Conner, 372 U.S. 221, 223 (1963) (finding that a declaratory judgment action "was in its basic character a suit to determine and adjudicate the amount of fees owing to a lawyer by a client under a contingent fee retainer contract, a traditionally 'legal' action"); Conn. Gen. Life Ins., 821 F. Supp. at 197 ("Since a contractual claim to benefits is a *legal* claim, the declaratory judgment plaintiffs seek is a form of *legal* relief, and therefore, plaintiffs' action is not to obtain equitable relief." (emphasis in original)). Had Plaintiff not been first to the courthouse, Defendant could have instead brought an action at law seeking monetary damages from Plaintiff for breach of contract, to which Plaintiff would no doubt raise the illegality of the contract as an affirmative defense. See Am. Safety Equip., 391 F.2d at 824 (finding a declaratory judgment action to be legal in nature as it could have alternatively arisen through the defendant suing the plaintiff to "collect outstanding royalties, and then [the plaintiff] assert[ing] the illegality of the agreement as a defense"). Such an action would involve the same set of issues as the instant case. Therefore Plaintiff's declaratory judgment action is in essence a legal action. Accordingly, it falls outside the scope of section 9.2(f), which allows for only injunctive or equitable relief as exceptions to the arbitration requirement.[6]

---

[6] Plaintiff also cannot bootstrap this case into the scope of section 9.2(f) based on its "Cross-Motion for an Injunction Precluding Arbitration" as that request for injunctive relief begs the very question before the court and

c. *Relief "to Enforce" the Provisions of this ASA Under Section 9.2(f)*

In addition, this dispute is not subject to section 9.2(f) because Plaintiff is not seeking "*to enforce* the provisions of this Agreement." (ASA ¶ 9.2(f).) Rather, Plaintiff seeks to void the ASA entirely. Judge Azrack noted this in her R&R (R&R at 9 n.4), a conclusion to which Plaintiff objects. Plaintiff contends that section 9.2 should be interpreted with reference to the ASA's "Severability" provision, which states "if any provision of this Agreement is found by an arbitrator or a court of competent jurisdiction to be invalid or unenforceable . . . . the tribunal having jurisdiction shall revise the provision in any reasonable manner." (ASA ¶ 9.9.) Plaintiff argues that this provision makes clear that seeking a court's power "to enforce" the agreement under section 9.2(f) encompasses seeking relief such as invalidation or revision of contract provisions. (Obj. at 10.)

A plain reading of section 9.2(f) indicates that the parties intended to constrain the scope of that provision to issues of enforcement. By comparison, the contract grants the arbitrator the broad, unqualified duty "to serve in . . . matter[s] of dispute resolution" and render "a decision," placing no limits on the type of relief the arbitrator may issue. (ASA ¶ 9.2(b), (c).) The intent appears to be that arbitration is the broad, default resolution mechanism, to which the Injunctive Relief provision provides a narrow exception. Interpreting section 9.2(f)'s "to enforce" language broadly as Plaintiff suggests would destroy that intent by subjecting a wide variety of disputes to judicial resolution, including any question of interpretation or reformation. To the extent that reading sections 9.2(f) and 9.9 in tandem injects some doubt into the scope of 9.2(f)'s exceptions to arbitration, a narrow interpretation of section 9.2(f) is supported by "the federal policy in favor of arbitration, which "requires that any doubts concerning the scope of arbitrable issues to be

---

would serve as an end run around the arbitration clause.

resolved in favor of arbitration." Telenor Mobile, 584 F.3d at 406. Therefore the court will limit exceptions to arbitration to the circumstances expressly permitted by section 9.2(f), that is when a party seeks "injunctive or equitable relief . . . in order to enforce" the ASA. That is not what Plaintiff's action seeks here.

Nor does the Severability provision (¶ 9.9) standing alone permit Plaintiff to seek judicial relief as Plaintiff argues in its objections. (Obj. at 13.) The purpose of section 9.9 is to make the provisions of the ASA severable; should any provision be invalidated by a court or arbitrator, the remaining terms will remain in effect. (See ASA ¶ 9.9.) The provision, however, does not itself authorize a party to seek court relief (or to seek arbitration for that matter). It simply recognizes that there may be circumstances under which a court might invalidate or revise a portion of ASA—for example, if the arbitration clause specifically had been procured by fraud and no longer applied—and provides guidance for such a contingency. Therefore the court finds that section 9.9 does not create an exception to arbitration. Plaintiff's objections based on sections 9.2(f) and 9.9 are overruled.

    2.    <u>The Validity of the ASA</u>

Plaintiff's objections include multiple arguments challenging the validity of the ASA. It argues that the ASA is an illegal agreement because it purports to allow Defendant to manage Plaintiff's facility and contains a fee structure that compensates Defendant as a percentage of the facility's income. (Obj. at 1-3.) Plaintiff argues that these contractual arrangements violate New York State Health Law and other regulations and contends that the R&R did not properly consider these arguments or note the legal scheme that governs Plaintiff's facility. (Id. at 2-3.) Plaintiff further asserts that the ASA is no longer valid because Plaintiff timely exercised its right

of termination within ninety days of signing the contract. (Id. at 5.) Plaintiff objects that this fact is not mentioned in the R&R. (Id.)

When, as here, a contract contains an agreement to arbitrate, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, (2006); see also Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). Plaintiff does not challenge the validity of the arbitration clause specifically; rather it challenges the validity of the contract as a whole.[7] In addition, the ASA expressly states that the dispute resolution provisions in section 9.2 "shall survive expiration or termination" of the agreement (ASA ¶ 9.2(d)), which renders the arbitration clause equally valid regardless of whether the agreement was properly terminated. Therefore, the issue of contract validity is properly reserved for the arbitrator and is outside the scope of judicial consideration. The R&R properly refrained from considering the arguments Plaintiff put forward, and these objections are overruled.

    3.    Public Policy

In its objections, Plaintiff argues that this dispute should not be submitted to arbitration because New York State has a strong public policy interest in the regulation of medical facilities within the state. (See Obj. at 5-7.) Plaintiff argues that New York's public policy would be ignored in arbitration because under Plaintiff's interpretation of the contract, the arbitrator must apply California law. (Id. at 6-7.) Although Plaintiff cites two cases that contain passing references to state regulation of public health issues, it offers no support for the argument that

---

[7] Although in its briefing, Plaintiff argued that the arbitration clause was unconscionable, the R&R found that this argument was actually a challenge to the ASA as a whole and therefore did not interpret it to specifically apply to the arbitration clause. (R&R at 19.) Plaintiff did not object to this finding.

17

such principles allow a court to reject a contract's arbitration clause. (Id. at 7 (citing Williamson v. Lee Optical of Okla. Inc., 348 U.S. 483 (1955); Semler v. Oregon State Bd. of Dental Examiners, 294 U.S. 608 (1935)).)

"[P]arties are generally free to structure their arbitration agreements as they see fit . . . . [and] may . . . specify by contract the rules under which that arbitration will be conducted." Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989) (internal citations omitted). The "primary purpose" of the FAA was to "ensur[e] that private agreements to arbitrate are enforced *according to their terms*," id. (emphasis added), and the Supreme Court has rejected a challenge to arbitrability based on the adequacy of arbitration procedures. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 21 (1991).

The court will not displace the parties' agreement to arbitrate based on Plaintiff's generalized appeal to public policy. The FAA was enacted to guard against precisely what Plaintiff advocates: "judicial hostility towards arbitration that . . . had manifested itself in a great variety of devices and formulas declaring arbitration against public policy." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1747 (2011) (internal citations and quotation marks omitted). Here, the parties have agreed to certain terms concerning the law and procedures that will govern arbitration, and it is for the arbitrator to interpret and apply those terms accordingly. Plaintiff can raise a choice-of-law argument or challenge other arbitration rules within the context of those proceedings. Moreover, since the ASA purports to select California law to govern the *entire* agreement, Plaintiff's argument does not challenge the arbitration clause specifically. (See ASA ¶ 9.6.) To the extent that Plaintiff argues that the contract is void under public policy due to its choice-of-law-provisions, this argument too should go before the arbitrator. Rent-A-Ctr., 561 U.S. at 70. Therefore, Plaintiff's objections are overruled.

### C. Remainder of the Report & Recommendations

Portions of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2. The court therefore reviews for clear error the portions of Judge Azrack's R&R that were not objected to and finds none. Accordingly, the court also adopts those portions of the R&R.

### V. STAY PENDING ARBITRATION

Having found that this dispute should be referred to arbitration according to the terms of the ASA, the court may either stay the litigation pending arbitration or dismiss the action entirely. Under § 3 of the FAA:

> [T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C § 3. The district court has discretion in deciding whether a stay or dismissal would be more appropriate. Guida v. Home Sav. of Am., Inc., 793 F. Supp. 2d 611, 620 (E.D.N.Y. 2011). However, "[t]he Second Circuit urges courts deciding whether to dismiss or stay litigation when referring a matter to arbitration to 'be mindful of this liberal federal policy favoring arbitration agreements' and consider that '[u]nnecessary delay of the arbitral process through appellate review is disfavored.'" Id. (second alteration in original) (quoting Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 92-93 (2d Cir. 2002)). Although entering a stay allows the parties to proceed directly to arbitration and can promote a "more expeditious resolution of the dispute," id., some courts nevertheless opt to dismiss the litigation where the entire controversy is subject to arbitration. See, e.g., Mazza Consulting Grp., Inc. v. Canam Steel Corp., No. 08-CV-38

(NGG), 2008 WL 1809313, at *7, (E.D.N.Y. Apr. 21, 2008); Perry v. N.Y. Law Sch., No. 03-CV-9221 (GBH), 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004).

In order to allow the parties to proceed expediently to arbitration and avoid the delay of appellate proceedings, the court concludes a stay pending arbitration is appropriate pursuant to § 3 of the FAA. The R&R is MODIFIED as to this conclusion.

## VI. CONCLUSION

For the reasons set forth above, Judge Azrack's R&R is ADOPTED AS MODIFIED herein. Plaintiff's Motion to Remand this action to state court is DENIED, Defendant's Motion to Compel Arbitration is GRANTED, and this action is STAYED pending completion of arbitration. Within thirty days of the resolution of arbitration, the parties shall file a status report, updating the court accordingly.[8]

SO ORDERED.

Dated: Brooklyn, New York
August 12, 2014

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

---

[8] The court notes that the ASA contains a forum selection clause that purports to require the parties to bring actions relating the ASA in the state and federal courts located in or with jurisdiction over Santa Clara County, California. (ASA ¶ 9.2(i).) Therefore, should the parties require additional judicial relief, the court will entertain a request to change venue.